IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL E. RHOADS,**

        Plaintiff,

  vs.                                  Civil Action 2:14-cv-318
                                            Judge Frost
                                            Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.


## REPORT AND RECOMMENDATION

**I.  Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is now before the Court on *Plaintiff Michael E. Rhoads's Statement of Specific Errors* ("*Statement of Errors*"), Doc. No. 10, *Defendant's Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 11, and *Plaintiff's Reply*, Doc. No. 12.

Plaintiff Michael E. Rhoads filed his applications for benefits on April 29, 2011, alleging that he has been disabled since July 1, 2008.  *PAGEID* 242, 249.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on January 18, 2013, at which plaintiff, represented by counsel, appeared and testified, as did

Jerry Olsheski, who testified as a vocational expert. *PAGEID* 64. In a decision dated January 29, 2013, the administrative law judge concluded that plaintiff was not disabled from July 1, 2008, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 58. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 4, 2014. *PAGEID* 31.

Plaintiff was 48 years of age on the date of the administrative law judge's decision. *See PAGEID* 58, 242. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a fast food worker, bakery conveyor-line attendant, and production machine tender. *PAGEID* 56, 84. Plaintiff was last insured for disability insurance purposes on December 31, 2013. *PAGEID* 49. He has not engaged in substantial gainful activity since July 1, 2008, his alleged date of onset of disability. *Id*.

**II. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of borderline intellectual functioning, alcohol abuse, degenerative disc disease, status post bilateral burns to the feet and skin grafting, and plantar fasciitis. *PAGEID* 49. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity to

> lift and carry twenty pounds occasionally; lift and carry ten pounds frequently; stand, walk, and sit up to six hours in an eight hour workday with normal breaks; occasionally

2

>       use his bilateral lower extremities to operate foot
>       controls; never climb ladders, or scaffolds; occasionally
>       climb ramps and stairs; occasionally stoop, kneel, or
>       crouch; is also limited to simple, routine, and repetitive
>       tasks; requires work that only involves occasional
>       decision-making and occasional changes in the work setting;
>       only occasionally interact with the public so long as
>       contact is brief and superficial (defined as the claimant
>       should not be involved in negotiations, confrontation, or
>       supervising others and where the claimant would not have
>       direct contact with others for more than fifteen minutes at
>       a time; occasionally interact with co-workers as long as no
>       tandem tasks are assigned and where his interaction would
>       be brief and superficial; and could not perform work that
>       would require strict production requirements[)].

*PAGEID* 51. Although this residual functional capacity would preclude plaintiff's past relevant work, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such jobs as assembler, production inspector, and hand packer. *PAGEID* 56-58. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from July 1, 2008, through the date of the administrative decision. *PAGEID* 58.

**III. Discussion**

   Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence

3

as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Plaintiff argues, *inter alia*, that the administrative law judge erred in concluding that plaintiff does not meet the requirements of Listing 12.05C. *Statement of Errors*, pp. 12-15. Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's intellectual disability:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when
>
> . . .

4

>    (C) [the claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  A claimant must establish three elements in order to satisfy Listing 12.05C: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) a "valid verbal, performance, or full scale IQ of 60 through 70," and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*.  *See also Foster v. Harris*, 279 F.3d 348, 354–55 (6th Cir. 2001).  Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.00(C)(4).  *See also West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").  Present IQ scores do not alone establish that the claimant suffered subaverage intellectual functioning or deficits in adaptive functioning during the developmental period.  "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Comm'r*

5

*of Soc. Sec.*, 381 F. App'x 488, 491-92 (6th Cir. 2010) (citing *Foster*, 279 F.3d at 354-55).

The administrative law judge expressly considered Listing 12.05C, but concluded that plaintiff did not satisfy the requirements of the Listing "because there was no evidence presented indicating that the claimant had a full-scale intelligence score of less than seventy." *PAGEID* 51. Plaintiff argues that the administrative law judge erred in evaluating 12.05C by requiring a "full-scale intelligence score of less than seventy" and not recognizing plaintiff's verbal score of 66. *Statement of Errors*, pp. 12-15. This Court agrees.

Plaintiff was evaluated by Jennifer L. Scott, Psy.D., on August 6, 2011, for the state agency. *PAGEID* 449-57. Plaintiff reported that he graduated from high school, but that he went to school for only one hour on Fridays during the twelfth grade. *PAGEID* 450. Plaintiff could not recall if he was in special education classes, but he reported failing grades and problems in reading, spelling, and math. *Id*. He also had problems getting along with teachers and peers; he recalled being suspended approximately 50 times for fighting, yelling, and skipping school. *Id*. He was expelled for hitting his principal. *Id*. Plaintiff also testified that he has been arrested approximately 30 times. *Id*.

Plaintiff's interests include drinking beer; on a typical day, he will "sit in the barn and drink beer by [himself]." *PAGEID* 451. He leaves home only when absolutely necessary and he performs no

household chores because it takes too long. *Id*. He visits friends on occasion and is able to adequately attend to his personal care. *Id*.

Dr. Scott noted that plaintiff's general reasoning abilities and short-term and working memory were limited; his attention and concentration and his arithmetic reasoning abilities were marginally adequate. *PAGEID* 452. Plaintiff's "phraseology, grammatical structure, and vocabulary suggest that he is of borderline intelligence." *Id*. Dr. Scott assigned a global assessment of functioning score ("GAF") of 41[1] and diagnosed alcohol dependence. *PAGEID* 456. According to Dr. Scott, plaintiff "would likely have significant difficulty with multi-step instructions due to limited cognitive abilities." *Id*. Plaintiff was "marginally able to sustain attention and concentration, as he appeared preoccupied with his pain." *Id*. Dr. Scott "questioned" plaintiff's ability to adequately regulate his anger in a workplace setting. *Id*.

On the Wechsler Adult Intelligence Scale-4th Edition ("WAIS-IV"), *PAGEID* 453, plaintiff achieved a Verbal Comprehension Index score of 66, a Perceptual Reasoning Index score of 94, and a Full Scale IQ score of 77. *Id*. Dr. Scott opined that the "significant discrepancy between [plaintiff's] verbal and perceptual scores,

---

[1]
>   The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . .

*Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

7

indicat[es] that the FSIQ does not adequately capture [plaintiff's] true overall cognitive abilities." *Id*. Dr. Scott further opined that a "discrepancy of this magnitude is unusual and is usually reflective of learning difficulties, neurological impairment, or significant anxiety." *PAGEID* 453. Dr. Scott recommended further testing to assess potential learning disabilities. *PAGEID* 453-54.

The administrative law judge's evaluation of Listing 12.05C considered only whether plaintiff had a full-scale intelligence score of less than seventy. *See PAGEID* 51. Listing 12.05C is not, however, limited to consideration of full-scale intelligence scores. To satisfy Listing 12.05C, a claimant must establish, *inter alia*, that he has a "valid verbal, performance, or full scale IQ of 60 through 70." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. The administrative law judge's failure to consider plaintiff's verbal score of 66 is therefore error.

The Commissioner concedes that the administrative law judge erred in evaluating Listing 12.05C. *Commissioner's Response*, pp. 12-15. The Commissioner argues, however, that any error in this regard was harmless. *Id*. The Commissioner specifically argues that plaintiff has offered insufficient evidence of the remaining elements of Listing 12.05C and that substantial evidence supports a finding that plaintiff does not meet the Listing. *Id*. The Commissioner's arguments are not well taken.

The Commissioner argues that, "[b]ecause substantial evidence supports a finding that Plaintiff did not have significantly

8

subaverage intellectual functioning and adaptive deficits initially manifested before age twenty-two, a full analysis of Plaintiff's condition under Listing 12.05C would have led to the conclusion that Plaintiff does not meet the Listing." *Commissioner's Response*, p. 15. The Commissioner's arguments to the contrary notwithstanding, the existence of substantial evidence to support a position does not compel a decision in favor of that position.  Substantial evidence is more than a scintilla of evidence but less than a preponderance; see *Buxton*, 246 F.3d at 772; *Kirk*, 667 F.2d at 535; it is therefore not entirely uncommon for there to be substantial evidence in support of conflicting conclusions. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .") (internal quotations omitted) (quoting *Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003)).  Plaintiff has cited some evidence to support a finding of disability under Listing 12.05C.  It is not this Court's right to determine in the first instance whether the evidence is sufficient to satisfy the Listing.

The Commissioner also erroneously implies that a formal diagnosis of mental retardation[2] is necessary under Listing 12.05C. *See Commissioner's Response*, p. 13 ("Furthermore, Plaintiff has never been

---

[2] Prior to September 3, 2013, Listing 12.05 referred to "mental retardation," rather than to "intellectual disability."

9

diagnosed with mental retardation . . . ."). Although the absence of a formal diagnosis of mental retardation may be relevant to a claim under Listing 12.05C, see *Cooper v. Comm'r Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) ("It is undisputed that no psychologist has diagnosed [the plaintiff] with mental retardation. The examiner and clinical psychologist who tested him diagnosed him instead as borderline intellectual functioning."), a formal diagnosis is not a necessary prerequisite to the Listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The only reference to Listing 12.05C by the administrative law judge was an erroneous conclusion that 12.05C requires a full scale IQ score of 70 or below. *See PAGEID* 51. The administrative law judge neither set forth nor properly evaluated the elements of the Listing. The administrative law judge's discussion of Listing 12.05C is so deficient that this Court cannot meaningfully review the decision. See *Miller v. Comm'r of Soc. Sec.*, 181 F. Supp. 2d 816, 820 (S.D. Ohio 2001) ("The ALJ thus failed to discuss the elements of Listing § 11.03, and whether or not the evidence demonstrated that plaintiff satisfied those elements. In the absence of such a discussion, the Court cannot conduct a meaningful review of the record, for it is unclear precisely *why,* in the ALJ's view, plaintiff did not satisfy Listing § 11.03.").

In short, the Court concludes that the administrative law judge erred in his evaluation of plaintiff's claim by reference to Listing 12.05C. It is therefore **RECOMMENDED** that the decision of the

Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of Listing 12.05C.

Having concluded that the action must be remanded on this basis, the Court need not and does not address plaintiff's remaining arguments.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

September 15, 2014                    *s/Norah McCann King*
                                       Norah M$^c$Cann King
                                       United States Magistrate Judge

11